# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REITNOUR INVESTMENT PROPERTIES -- LIMERICK, L.P. | : | CIVIL ACTION |
| 1260 Valley Forge Road, Suite 103 | : | NO. _____ |
| Phoenixville, Pennsylvania 19460 | : | |
| | : | |
| vs. | : | |
| | : | |
| CLARICA LIFE INSURANCE COMPANY – U.S. | : | |
| 13890 Bishop's Drive, Suite 300 | : | |
| Brookfield, Wisconsin 53008 | : | |
| | : | |
| and | : | |
| | : | |
| WILMINGTON TRUST CORP. | : | |
| Rodney Square North | : | |
| 1100 North Market Street | : | |
| Wilmington, Delaware 19890-0001 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Reitnour Investment Properties -- Limerick, L.P. ("Reitnour L.P."), for its Complaint against defendants Clarica Life Insurance Company – U.S. (together with any affiliates collectively defined as "Clarica") and Wilmington Trust Corp. ("Wilmington Trust"), seeking injunctive relief including a temporary restraining order and preliminary injunction, and other relief, avers the following:

### INTRODUCTION

1.      This action arises out of an unconsummated loan transaction between Plaintiff Reitnour L.P. and Defendant Clarica.

2.      Specifically, in 2001 Reitnour L.P. applied for two loans as "permanent financing" for a property in Montgomery County.  The two loans were for principal loan amounts of $11,110,000 (Clarica Loan #662) and $5,225,000 (Clarica Loan # 146).

3.      Reitnour L.P. paid fees in the course of applying for the two loans.  These fees, which are set forth in greater detail below, included payments made via letters of credit, issued by Wilmington Trust of Pennsylvania, in the aggregate amount of $327,000.   Pursuant to the relevant agreements, if Clarica does not fund the loans, and certain conditions are met, Reitnour L.P. is allowed to cancel the letters of credit and can obtain a refund of the fees, less some non-refundable expenses.

4.      As part of the process of approving the loan, Clarica provided for each loan a Commitment for Mortgage Loan ("Commitment Letters").  The Commitment Letters incorporate conditions for closing.  Upon information and belief, Clarica has refused to close on the loans, and instead it has presented a demand on the letters of credit to Wilmington Trust on the basis that Plaintiff failed to meet one of those conditions, specifically, a condition that certain litigation in Montgomery County was to be resolved before the funding on the loans would occur.  However, Reitnour L.P. was not, and is not, in default.

5.      Reitnour L.P. brings this action for breach of contract seeking both equitable and other relief, including a temporary restraining order and preliminary injunction, to prevent defendant Clarica from drawing against the letters of credit issued by Wilmington Trust of Pennsylvania for the account of Plaintiff in the aggregate amount of $327,000.  Upon information and belief, the letters of credit will be administered and paid out by defendant Wilmington Trust Corp. located in Wilmington, Delaware.  Reitnour L.P. also seeks damages from Clarica for its breach of related loan agreements.

2

6.      If a temporary restraining order is not issued, Reitnour L.P. will suffer irreparable harm.  Wilmington Trust will release the proceeds, and Reitnour L.P. will be irreparably damaged because Wilmington Trust will freeze other of Reitnour L.P.'s assets held at Wilmington Trust in the amount of the letter of credit, and it will charge interest on that amount.

7.      Reitnour L.P. will thus have a new debt obligation, which will affect its access to further credit, and, more importantly, will prevent Reitnour L.P. from obtaining alternative permanent financing because the assets Reitnour L.P. would use to obtain such financing will be frozen.  Permanent financing is critical to Reitnour L.P. as a real estate developer.  The freezing of Reitnour L.P.'s assets will obstruct and delay Reitnour L.P.'s attempts to obtain alternative permanent financing particularly during economic times that are already difficult.  Delays also harm Reitnour L.P. because it is likely, given current interest rates, that financing obtained later will be obtained on terms less favorable to Reitnour due to rising interest rates – if it can obtain such financing at all, given that its assets will be frozen and tied up due to Clarica's contemplated actions.

8.      The harm to Reitnour L.P. is therefore great if the injunctive relief requested is not granted, but the harm to the defendants is slight.  Wilmington Trust will merely continue in its role as issuer of the letter of credit.  Clarica will only be deprived of the benefits of the proceeds of the letters of credit until this dispute is resolved and it is determined if, in fact, Clarica is actually entitled to these proceeds.  In fact, Clarica is not.

9.      Plaintiff is likely to prevail on the merits.  Plaintiff has satisfied its obligations and is not in default, making Clarica's demand and presentment on the letters of credit improper and wrongful.

10.     The public interest favors the granting of the requested relief.  It is against the public interest to allow a party to improperly draw down on a letter of credit.

## THE PARTIES

11.     Plaintiff Reitnour Investment Properties -- Limerick, L.P. ("Reitnour L.P.")  is a Pennsylvania limited partnership with its principal place of business at 1260 Valley Forge Road, Suite 103, Phoenixville, PA 19460.  The general partner of Reitnour L.P. is Reitnour Property Corporation – Limerick, which is a Pennsylvania corporation with its principal place of business in Pennsylvania.  The only limited partner is Philip A. Reitnour, who is a citizen of Pennsylvania and who resides in Chester County, Pennsylvania.

12.     Defendant Wilmington Trust is a Delaware Corporation with its principal place of business at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001.

13.     Defendant Clarica is a North Dakota corporation and has its principal place of business at 13890 Bishop's Drive, Suite 300, Brookfield, Wisconsin 53008.  Upon information and belief, Clarica will soon merge with the large Canadian corporation Sun Life Financial Services of Canada.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of the Commonwealth of Pennsylvania and defendants are not citizens of Pennsylvania.   Clarica is a citizen of North Dakota and Wisconsin, Wilmington Trust is a citizen of Delaware, and the parties are therefore of diverse citizenship.  Further, as indicated by the amount of letters of credit at issue, more than $75,000, exclusive of interest and costs, is in controversy.

4

15.    Venue is properly laid in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(a), because a substantial number of the events giving rise to the claims occurred here, and a substantial part of the property that is the subject of the action is situated within the Eastern District of Pennsylvania.  The property to be refinanced and mortgaged through Clarica is in Montgomery County, Pennsylvania, and, further, the letters of credit were issued through Wilmington Trust of Pennsylvania, a subsidiary of Wilmington Trust, which has its principal place of business within the Eastern District of Pennsylvania.  The Commitments and related Applications were executed, at least in part, in the Eastern District of Pennsylvania.

### FACTUAL BACKGROUND

**The Clarica Loans And Commitment Letters**

16.    Reitnour L.P. owns the Lakeview Shopping Center ("Shopping Center") located in Montgomery County, Pennsylvania.

17.    Reitnour L.P.'s development of the Shopping Center was initially financed via two mortgage loans.

18.    The subject of this litigation concerns the application for two new mortgage loans concerning the Shopping Center; defendant Clarica would be the mortgagee on these two new loans.  Plaintiff Reitnour L.P. sought these loans in order to refinance the Shopping Center.

19.    Clarica provided Commitments to fund with respect to the two new loans via Commitment Letters dated September 5, 2001, with a funding date calling for the loan to close on or before March 2, 2002.

20.    The Commitments were extended multiple times by agreement of the parties to the loans.  For example, by letters dated February 13, 2002, Clarica agreed to extend the funding date under its Commitment from March 2, 2002 to April 1, 2002.  Clarica then

agreed in letters dated March 26, 2002 to extend the funding date to April 15, 2002.  By letters

dated April 12, 2002, Clarica agreed to extend the time further, to April 30, 2002.   Later, by

letters dated May 1, 2002, the Commitments were further extended to May 17, 2002.

21.    The two loans were for principal loan amounts of $11,110,000 (Clarica

Loan #662) and $5,225,000 (Clarica Loan # 146).

22.    The terms of the Commitment Letters include by reference the terms

provided in Reitnour L.P.'s Applications for a mortgage loan ("Applications"); the Applications

are dated July 17, 2001.

**The Fees Paid in Connection with the Applications and Commitment Letters**

23.    In connection with obtaining the Commitment Letters from Clarica,

Reitnour L.P. paid an underwriting fee of $3,000 per loan and a forward commitment fee in the

aggregate of $65,4000.  In addition, Plaintiff paid $392,400 directly to Clarica in a series of

checks as part of the application fees and commitment fees; the remainder of these fees were

paid by Reitnour via letters of credit, issued by Wilmington Trust of Pennsylvania, in the

aggregate amount of $327,000.   The portion of the fees embodied in the letters of credit is the

subject of the temporary restraining order that Plaintiff seeks.

24.    Pursuant to an Addendum to a Schedule to the Applications (Paragraph

5(c) for Loan # 662, Paragraph 4(c) for Loan # 146), the fee that Reitnour L.P. paid was

$392,400 in cash (which Reitnour L.P. paid) plus $327,000 posted by two letters of credit issued

by defendant Wilmington Trust's subsidiary, Wilmington Trust of Pennsylvania.  The two letters

of credit are in the amounts of $104,500 (Letter of Credit No. 4-0211) and $222,500 (Letter of

Credit No. 4-0212).  The letters of credit expire by their terms on July 1, 2002, and, upon

information and belief, if drawn upon, are funded through Wilmington Trust in Delaware.

25.    Upon information and belief, on May 28, 2002, Clarica presented a demand on the letters of credit to Wilmington Trust of Pennsylvania.  Upon information and belief, the presentation of demand has been forwarded to defendant Wilmington Trust in Delaware to be administered and possibly honored.

26.    Paragraph 15 of the Plaintiff's Applications to Clarica, entitled "Fees and Deposits," provides in pertinent part that "If a Loan is not approved substantially in accordance with the terms of this Application, the Application Fee will be returned to the Applicant less any costs and expenses described below.  If a Loan is approved by Clarica, the Application Fee will apply towards the Commitment Fee required by Clarica and described below."

27.    The same Paragraph 15 of the Applications also states, "The Commitment Fee must accompany the Commitment when it is accepted by the Applicant and returned to Clarica.  After the Loan has been closed and funded, Clarica will promptly refund, by check to the Applicant, the Commitment Fee less the deductions listed below. "  (This sentence appears to have been accidentally cut off in mid-sentence in the Application for Loan #146.)

**The Alpha Realty Litigation as a Condition in the Commitment Letters**

28.    Particularly in dispute at present is a provision in the Applications that relates to another litigation, the "Alpha Realty litigation" (Alpha Realty Management Co. v. Reintour Investment Properties – Limerick, L.P., Montgomery County Court of Common Pleas Civil Action no. 99-14039).

29.    The Applications of Reitnour L.P. state, in Paragraph 4(k) (Loan  # 146) / Paragraph 5(k) (Loan # 662) of an Addendum to a Schedule attached to the Applications, in pertinent part:  " . . . Borrower has disclosed to Lender that it is a defendant in the "Alpha Realty" litigation, which Borrower represents will be resolved prior to funding the Loan and will not adversely impact the Borrower or encumber the Property."

7

30.     The Addendum also states, in its closing paragraph, in pertinent part, ". . . Lender agrees that in the event Lender decides not to fund the Loan due to any of the Disclosures *or due to any other reason beyond Borrower's reasonable control*, such as environmental, survey or title issues, Lender will return to Borrower all fees paid by Borrower to Lender less the Underwriting Fee, the forward commitment fee and Lender's actual out-of-pocket costs and expenses." (emphasis added).

31.     In the Alpha Realty litigation, Reitnour L.P. is the defendant.  A judgment by confession in the principal amount of $475,000 was entered in the Montgomery County Common Pleas in that action.

**Reitnour L.P.'s Efforts to Resolve the Alpha Realty Litigation**

32.     Plaintiff has undertaken numerous actions in order to resolve the Alpha Realty litigation.  For example, Reitnour L.P. filed a petition to vacate and open the confessed judgment in the Montgomery County Court of Common Pleas.

33.     On February 26, 2002, the Honorable Paul W. Tressler of the Montgomery County Court of Common Pleas entered an Order in the Alpha Realty litigation that states, in pertinent part, "1. This court shall order the judgment lien vacated if defendant certifies that it has filed a bond in the amount of no less than $750,000.00, and for a duration of no fewer than four years, provided that the property currently subject to the lien shall not be used as collateral for said bond; 2. In no event shall defendant sell the property currently subject to the lien prior to the final resolution of the above-captioned matter, without prior approval of this court; . . . ."

34.     On or about April 5, 2002, in accordance with the Order of the Montgomery County Court of Common Pleas dated February 26, 2002 in the Alpha Realty litigation, Reitnour L.P. delivered or caused to be delivered to the Honorable Paul W. Tressler of the Montgomery County Court of Common Pleas a bond issued by Harleysville Mutual

8

Insurance Company in the amount of $559,000 along with a letter of credit in the amount of

$191,000 issued by New Century Bank, totaling $750,000.00. These efforts were undertaken by

the Plaintiff in order to resolve the Alpha Realty litigation and satisfy the related condition of the

Commitment Letters.

35.     By letter dated April 22, 2002, New Century Bank clarified to the

Honorable Paul W. Tressler that if Reitnour L.P. did not replace the bond prior to November 20,

2002 with another bond for a term of not less than 3 years in the full amount of $750,000, then

upon delivery to New Century Bank of its original letter of credit, New Century Bank would

issue an unconditional letter of credit naming the Montgomery County Court of Common Pleas

as beneficiary effective November 30, 2002 in the face amount of $750,000 for a term of three

years.

36.     The bond was originally issued to Old Republic Title Insurance Company

in connection with Plaintiff's  construction loan for the Shopping Center; the construction lender

required that a bond be posted to the title company.  On March 20, 2002, the obligee under that

original bond was changed from the title insurance company to the Montgomery County Court of

Common Pleas.

37.     Plaintiff offered the security requested in the Court's February 26, 2002

Order in this manner because Plaintiff was unable to obtain a bond in the full amount, due to the

tightening of the bonding market after September 11, 2001.  Instead, Plaintiff obtained the letter

of credit from New Century Bank to make up the difference.

38.     Despite the efforts of the Plaintiff, Alpha Realty objected to the form of

Plaintiff's posted bond and letter of credit.  Due to this action by Alpha Realty, which was

beyond the Plaintiff's control, the Court in the Alpha Realty litigation did not vacate the judgment lien.  Clarica did not object to the bond and letter of credit.

      39.    Reitnour L.P. has also tried to resolve in other ways Clarica's concern over the Alpha Realty litigation, and those efforts were rebuffed by Clarica.   Despite Reitnour L.P.'s offer to have the judgment lien covered by title insurance, Clarica has not agreed to have a title company insure the judgment lien in the Alpha Realty litigation.   Consequently, Plaintiff, obtained a favorable Order from the Montgomery County Court of Common Pleas, posted the requested funds, and it also offered an alternative solution of title insurance.  Clarica has not accepted any of these as resolving the litigation, and thus Plaintiff has been forced to look for still more ways to resolve the Alpha Realty litigation pursuant to the Commitment Letters.

      40.    In yet another attempt to resolve the Alpha Realty litigation, Plaintiff agreed to provide Clarica with a letter of credit to satisfy the judgment lien.

      41.    In fact, Clarica initiated this resolution, and Reitnour L.P. accepted it.

      42.    Specifically,  Reitnour L.P. agreed to obtain a letter of credit in favor of Clarica so that Clarica could draw on the letter of credit to pay off the Alpha Realty judgment in the event the judgment was not satisfied directly by Reitnour L.P. after the occurrence of specified events, particularly the non-payment of the judgment.

      43.    Following up on this agreement, in letters dated April 30 and May 3, 2002, through counsel, Reitnour asked Clarica to review a form letter of credit and to draft a letter agreement governing the disposition of the letter of credit; Reitnour L.P. offered to draft the letter agreement if Clarica did not have the time to do so.

      44.    By e-mail dated May 8, 2002, Reitnour L.P.'s counsel was informed that Clarica did not approve of the form of letter of credit.  Reitnour L.P. asked for a draft letter

agreement governing when and under what terms Clarica could draw down the letter of credit, suggesting that Clarica should have the right to draw down the letter of credit if Reitnour L.P. did not pay the judgment off within thirty days after the date the judgment became final and unappealable.

45. Clarica presented Reitnour L.P. with its form of a letter of credit. Reitnour L.P. sought to have the letter of credit issued by New Century Bank, but Clarica objected to that bank. In further pursuit of its objective of satisfying Clarica's demands and concerns, Reitnour L.P. then went to Wilmington Trust, to have a letter of credit issued in the amount of $750,000, in the form approved by Clarica. After Reitnour L.P. did this, Clarica then apparently decided that it would not be satisfied with this approach.

46. Further, Clarica's draft letter of credit agreement did not reflect the agreement of the parties, and thus another attempt of Plaintiff to resolve the Alpha Realty litigation was waylaid by Clarica.

47. On May 13, 2002, Clarica stated in a letter that it did not believe the Alpha Realty litigation had been resolved as required by the Commitment Letters, and it further noted that it believed the Court of Common Pleas' February 26, 2002 Order prohibiting Reitnour L.P. from encumbering the property for the bond or selling the property until final resolution of the Alpha Realty created risks for Clarica. Clarica apparently believed that if it proceeded all the way to closing on the loans, it could be subjected to a contempt of court action, and that it could also be subjected to a contempt of court action if it did close on the loans and later attempted a remedy of foreclosure. In sum, with the February 26, 2002 Order in place, Clarica would not close on the loans, requiring that Reitnour L.P. "resolve" the Alpha Realty litigation or have the Court of Common Pleas of Montgomery County issue a clarifying order removing the risk of the

contempt of court action. Clarica also offered to extend the Commitments until May 31, 2002 without additional fees if this could be done.

48.    Reitnour L.P. responded with yet another attempt to satisfy Clarica. Reitnour L.P. planned to move to have the February 26, 2002 Order of the Montgomery Court of Common Pleas vacated, in order to resolve Clarica's reservations about the language in that Order. Thus, after having successfully gone through the procedure of opening the judgment in an attempt to resolve the Alpha Realty litigation to appease Clarica, Clarica forced Reitnour L.P. to "undo" its work because Clarica did not like the language in the Order issued by the Court of Common Pleas of Montgomery Count.

49.    However, Reitnour L.P. and the plaintiff in the Alpha Realty litigation were unable to agree to the form of a stipulation to vacate the February 26, 2002 Order of the Montgomery Court of Common Pleas.

50.    Reitnour L.P.'s counsel wrote to Clarica's counsel on May 17, 2002 explaining that the opposing party in the Alpha Realty litigation refused to stipulate to vacate to vacate the February 26 Order. Reitnour L.P.'s counsel also noted 1) that Reitnour L.P. had tried to accommodate Clarica first by moving to vacate and open the confessed judgment, which resulted in the February 26, 2002 Order; 2) that Clarica's fear of a contempt of court action based on the language of that Order was unfounded, as there was already a mortgage on the property, and that the original mortgage and any subsequent mortgages such as the ones contemplated with Clarica would be subordinate to the judgment lien and thus of no consequence to the judgment creditor; 3) that this was why Reitnour L.P. had agreed to provide an additional letter of credit in favor of Clarica, as proposed by Clarica, to cover the judgment lien in the event Reitnour L.P. did not pay it on its own.

51.    Reitnour L.P.'s counsel also wrote that the Alpha Realty litigation could still be addressed by 1) title insurance or 2) Clarica's reconsidering its conclusion that there was a risk of a contempt proceeding, and if either of these occurred, Reitnour L.P. would accept the offer to extend the Commitments until May 31, 2002; in the alternative, Reitnour L.P.'s counsel requested that Clarica return Reitnour L.P.'s fees (the $327,000 in letters of credit and $392,400 in cash, less other fees and expenses).

52.    As of May 29, 2002, Clarica had not offered to accept title insurance or to agree to the other proposals for resolution of the Alpha Realty litigation issue, nor had it returned to Reitnour L.P. its refundable fees.

53.    In fact, upon information and belief, on or about May 28, 2002 Clarica made presentment to defendant Wilmington Trust on the $327,000 aggregate in the letters of credit.  Reitnour L.P. is not aware of Clarica's disposition of the $392,400 in cash it provided to Clarica.

**Reitnour L.P. Will Be Irreparably Harmed, and the Balance of Equities Favors Plaintiff**

54.    If Wilmington Trust honors the letters of credit, Reitnour L.P. will be irreparably harmed, for the reasons stated above.

55.    In contrast, the harm to Clarica and Wilmington Trust will be negligible if this Honorable Court provides the requested injunctive relief.  First, Clarica will receive a windfall if it draws on the letters of credit; it has backed off from closing on the loans, and thus stands to gain a total of $750,000 because it has decided it does not want to face a $450,000 (plus interest) risk, that is hardly a risk at all.  If Clarica actually believes that it is correct that Plaintiff failed to abide by its obligation to "resolve" the Alpha Realty litigation – even though Plaintiff petitioned to open the judgment, obtained a favorable Court Order, and posted the required funds, and was willing to bring about alternative solutions such as title insurance or a letter of

credit – then the worst that Clarica suffers is a delay in receiving its windfall. The harm to Wilmington Trust is negligible, as the requested relief merely requires it to continue its role as issuer of the letters of credit.

56. Thus, neither Clarica nor Wilmington Trust will suffer irreparable harm if the temporary restraining order is issued.

### Reitnour L.P. is Likely to Prevail on the Merits

57. Plaintiff is likely to prevail on the merits.

58. The issue presented is whether Plaintiff "resolved" the Alpha Realty litigation prior to the funding of the mortgage loans, and, as importantly, if it is determined that Plaintiff's good faith attempts to "resolve" were unsuccessful, it was for reasons beyond the Plaintiff's control.

59. First, Plaintiff has resolved the Alpha Realty litigation, by obtaining the February 26, 2002 Order of the Court of Common Pleas of Montgomery County and by proceeds as set forth in that Order.

60. Second, the conduct of the parties indicates that Clarica had modified the condition in the Addendum and thereby waived any specific requirement that the judgment lien at issue be otherwise resolved; in particular, as described above, Clarica offered to take a letter of credit in lieu of the vacating of the lien, and Reitnour L.P. accepted this arrangement.

61. Moreover, the parties had at other times modified the Commitments, for example, by repeatedly extending the funding date.

62. Finally, Clarica's contention that Plaintiff failed to abide by its obligations under the Addendum is unreasonable. Plaintiff resolved the Alpha Realty litigation by obtaining the February 26 Order. Clarica remains unreasonably concerned about a possible contempt action. To allay this fear, Plaintiff has further offered to cover the lien via title insurance, and it

has also accepted Clarica's own proposed solution, an additional letter of credit. Clarica has unreasonably refused to accept these alternatives.

63.    The failure of the Court to vacate the judgment after Plaintiff posted money with the Court of Common Pleas, as a result of Alpha Realty's objection, was beyond Plaintiff's control. Plaintiff took all appropriate actions to open the judgment. Accordingly, under the terms of the Commitment Letters, the letters of credit should be cancelled.

64.    Similarly, Clarica's failure to accept other reasonable assurances and options for resolving any potential, if unlikely, adverse consequences stemming from the judgement lien, is beyond Plaintiff's control.

65.    Plaintiff herein requests, as part of its relief, a temporary restraining order and preliminary injunction. The foregoing demonstrates (i) the extent to which the Plaintiff will be irreparable injured by the conduct complained of; (ii) that the Defendants will not suffer irreparable harm if the temporary restraining order is granted; (iii)  a substantial likelihood that the Plaintiff will prevail on the merits; and (iv) that the granting of the injunction is in the public interest; further, the requested injunctive relief preserves the status quo ante.

## COUNT I –
## BREACH OF CONTRACT AGAINST CLARICA

66.    Paragraphs 1 through 65 are incorporated herein.

67.    The Commitment Letters and related documents, including the Application together with its Schedules and Addendum, constitute contracts between Clarica and Reitnour L.P.

68.    As set forth above, the fees paid by Reitnour L.P. are refundable, as is the funds Clarica obtains from the letters of credit in the aggregate amount of $327,000 (if it is not restrained from obtaining them)

69.    Reitnour L.P. also paid $392,400 in cash as fees to Clarica which has not been refunded, even though Clarica has refused to close on the loans pursuant to the Commitment Letters.

70.    This refusal to refund these monies is a breach of contract, causing damages to Plaintiff in the amount of the money (plus interest).

71.    Further, Clarica's unreasonable refusal to consummate the closing of this deal was in breach of the contract and is based on an unwarranted and unreasonable construction of Plaintiff's obligations.

72.    Further, to the extent Plaintiff failed to fulfill its obligations – which is denied – Plaintiff was impeded by Clarica, which unreasonably refused to accept 1) the obtaining of an Order from the Montgomery County Court of Common Pleas as resolving the Alpha Realty litigation and 2) Plaintiff's alternative solutions such as title insurance or a letter of credit. Otherwise, the issues Clarica had with Plaintiff's actions – such as the Court of Common Pleas wording in its February 26, Order, or the Court of Common Pleas failure to vacate the judgment lien because of the objection of Alpha Realty – were not within Plaintiff's reasonable control.

73.    The failure to close deprived Plaintiff of the benefit of its bargain, i.e., the terms of the loan, and also caused consequential damages.

WHEREFORE Plaintiff Reitnour Investment Properties -- Limerick, L.P. requests that this Court enter judgment in its favor together with the following relief:

(1) a Temporary Restraining Order restraining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(2) a Temporary Restraining Order restraining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(3) a Preliminary Injunction enjoining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(4) a Preliminary Injunction enjoining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(5) damages in excess of $700,000, plus interest, costs (including attorneys' fees), and such other relief as this Court deems just and proper.

**COUNT II–**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AGAINST CLARICA**

74.    Paragraphs 1 through 73 are incorporated herein.

75.    Implied in the Commitment Letters is a duty of good faith and fair dealing.

76.    As described at length above, Clarica did not act in good faith, nor did it deal fairly with Plaintiff, in (1) refusing to acknowledge that any perceive failure of Reitnour L.P. to "resolve" the Alpha Realty litigation was due to factors beyond Reitnour L.P.'s control; (2) refusing to accept alternative solutions, such as title insurance, or its own concept, a letter of credit, to protect Clarica from any perceived risk due to the judgment lien; (3) refusing to refund all refundable fees paid by Reitnour L.P.

WHEREFORE Plaintiff Reitnour Investment Properties -- Limerick, L.P. requests that this Court enter judgment in its favor together with the following relief:

(1) a Temporary Restraining Order restraining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(2) a Temporary Restraining Order restraining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(3) a Preliminary Injunction  enjoining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(4) a Preliminary Injunction enjoining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(5) damages in excess of $700,000, plus interest, costs (including attorneys' fees), and such other relief as this Court deems just and proper.

**COUNT III–**
**TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE**
**CONTRACTUAL RELATIONS AGAINST CLARICA**

77.     Paragraphs 1 through 76 are incorporated herein.

78.     Because Clarica has refused to refund Reitnour L.P.'s cash fees, and because it is proceeding with a presentation and demand on the letters of credit, as noted above Reitnour L.P. does not have access to the cash funds it would use to obtain permanent financing from an alternative lender.

79.     In fact, a mortgage broker, Urban/Poole & Heath, LLC has approached Reitnour L.P. with propositions for alternative financing from other lenders, including William Blair and J.P. Morgan that appear to be acceptable to Reitnour LP.

80.     However, because Clarica is refusing to refund the fees and is proceeding to draw on the letters of credit, Reitnour L.P. is unable to provide to these prospective alternative lenders the fees needed to obtain a commitment from these new lenders.

81.      It should be obvious to Clarica that if Clarica is not going to proceed to close on the loans, Reitnour L.P. will need to seek financing from another lender.

82.      Clarica's actions in refusing to refund monies and in proceeding to attempt to draw on the letters of credit are intentional and are done with knowledge that if Clarica does not consummate the loans with Reitnour L.P., Reitnour L.P. will have to look elsewhere for funding.

83.      Clarica's intentional actions thereby are directly causing damages to Reitnour L.P. and constitute tortuous interference with Reitnour L.P.'s prospective contractual relationships with these lenders.

84.      Clarica's actions are without justification and without privilege and are, in fact, contrary to the language of the Commitment Letters and related documents.

85.      Indeed, unless enjoined, Clarica's intentional actions will continue to interfere with these and other prospective contractual relations.

WHEREFORE Plaintiff Reitnour Investment Properties -- Limerick, L.P. requests that this Court enter judgment in its favor together with the following relief:

(1) a Temporary Restraining Order restraining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(2) a Temporary Restraining Order restraining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(3) a Preliminary Injunction  enjoining Wilmington Trust from honoring Letters of Credit Nos. 4-0211 and 4-0212; and,

(4) a Preliminary Injunction enjoining Clarica Life Insurance Company – U.S. and its affiliates from obtaining from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212;

(5) damages in excess of $700,000, plus interest, costs (including attorneys' fees), and such other relief as this Court deems just and proper.


Respectfully,

HANGLEY ARONCHICK SEGAL & PUDLIN


By: _____
    Henry E. Hockeimer, Jr. (Atty. I.D. No. 86768)
    Alan C. Promer (Atty. I.D. No. 81006)
    One Logan Square, 27th Floor
    Philadelphia, PA 19103-6933
    (215) 568-6200

    Attorneys for Plaintiff Investment Properties --
Dated: May 30, 2002    Limerick, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that copies of the Complaint, were served on May 30, 2002, as follows:

By Hand Delivery:    Richard M. Jordan, Esquire
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
(Counsel for Wilmington Trust Corp.)

By Federal Express:    Clarica Life Insurance Company – U.S.
13890 Bishop's Drive, Suite 300
Brookfield, Wisconsin 53008

By Federal Express:    Joseph J. Balistreri, Esquire
Reinhart, Boerner, Van Deuren,
  Norris & Rieselbach, S.P.
1000 North Water Street, Suite 2100
Milwaukee, WI 53203-3400
(Counsel for Clarica Life Insurance Company-U.S.)

_____

Alan Promer