**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____ :

REITNOUR INVESTMENT PROPERTIES --      :      CIVIL ACTION
     LIMERICK, L.P.                                         :
1260 Valley Forge Road, Suite 103              :      NO. _____
Phoenixville, Pennsylvania 19460               :
                                                               :
vs.                                                                   :
                                                               :
CLARICA LIFE INSURANCE COMPANY – U.S. :
13890 Bishop's Drive, Suite 300                 :
Brookfield, Wisconsin 53008                       :
                                                               :
and                                                                   :
                                                                 :
WILMINGTON TRUST CORP.                     :
Rodney Square North                                  :
1100 North Market Street                           :
Wilmington, Delaware 19890-0001             :
                                                                 :
Defendants.                                                  :
_____ :

**ORDER**

       AND NOW this _____ day of _____, 2002, upon consideration of the

Motion for Temporary Restraining Order and Preliminary Injunction, it is hereby ORDERED

that a Temporary Restraining Order is GRANTED;

       Wilmington Trust Corp. is restrained from honoring Letters of Credit Nos. 4-0211 and 4-

0212; and,

       Clarica Life Insurance Company – U.S. and its affiliates are restrained from obtaining

from Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212.

_____

                                                  , J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                      :
REITNOUR INVESTMENT PROPERTIES --    :        CIVIL ACTION
        LIMERICK, L.P.                                :
1260 Valley Forge Road, Suite 103           :        NO. _____
Phoenixville, Pennsylvania 19460            :
                                                      :
vs.                                                  :
                                                      :
CLARICA LIFE INSURANCE COMPANY – U.S. :
13890 Bishop's Drive, Suite 300              :
Brookfield, Wisconsin 53008                   :
                                                      :
and                                                  :
                                                      :
WILMINGTON TRUST CORP.                   :
Rodney Square North                            :
1100 North Market Street                       :
Wilmington, Delaware 19890-0001           :
                                                      :
Defendants.                                        :
_____

**ORDER**

AND NOW this _____ day of _____, 2002, upon consideration of the

Motion for Temporary Restraining Order and Preliminary Injunction, it is hereby ORDERED

that a Preliminary Injunction is GRANTED;

Wilmington Trust Corp. is enjoined from honoring Letters of Credit Nos. 4-0211 and 4-

0212; and,

Clarica Life Insurance Company – U.S. and its affiliates is enjoined from obtaining from

Wilmington Trust Corp. the proceeds of Letters of Credit Nos. 4-0211 and 4-0212.

                                            _____
                                                                              , J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| REITNOUR INVESTMENT PROPERTIES -- | : | CIVIL ACTION |
|    LIMERICK, L.P. | : | |
| 1260 Valley Forge Road, Suite 103 | : | NO. _____ |
| Phoenixville, Pennsylvania 19460 | : | |
| | : | |
| vs. | : | |
| | : | |
| CLARICA LIFE INSURANCE COMPANY – U.S. | : | |
| 13890 Bishop's Drive, Suite 300 | : | |
| Brookfield, Wisconsin 53008 | : | |
| | : | |
| and | : | |
| | : | |
| WILMINGTON TRUST CORP. | : | |
| Rodney Square North | : | |
| 1100 North Market Street | : | |
| Wilmington, Delaware 19890-0001 | : | |
| | : | |
| Defendants. | : | |
| _____ | | |

**MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

Plaintiff Reitnour Investment Properties -- Limerick, L.P. ("Reitnour L.P.") respectfully

moves this court for a temporary restraining order and preliminary injunction against defendants

Clarica Life Insurance Company – U.S. (together with any affiliates collectively defined as

"Clarica"), which is presently seeking to draw against those letters of credit, and Wilmington

Trust Corp. ("Wilmington Trust"), the issuer of letters of credit.  Reitnour L.P. seeks to preserve

the status quo ante by restraining Wilmington Trust from honoring, and restraining Clarica from

successfully demanding, payment on the letters of credit.

As is stated in the Complaint, Plaintiff will be irreparably harmed if Wilmington Trust

honors the letters of credit and if Clarica is allowed to draw on the letters of credit.  The result

would be a freeze on Plaintiff's assets at Wilmington Trust and the conversion of those assets

into a debt on which Plaintiff must pay interest.  Further, Plaintiff will be unable to obtain

permanent financing, because the assets he would use to obtain the financing will be frozen.

Greater injury will be inflicted upon Plaintiff by the denial of injunctive relief than would

be inflicted upon Defendants Wilmington Trust and Clarica.

Plaintiff has demonstrated a likelihood of success on the merits and that the balance of

equities weighs in favor of the issuance of an Order enjoining, restraining, and prohibiting

Wilmington Trust from honoring the letters of credit and enjoining, restraining, and prohibiting

Clarica from drawing against the letters of credit.

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order and Decree:

Temporarily Restraining and Preliminarily Enjoining Clarica Life Insurance Company –

U.S., and its affiliates and Wilmington Trust Corp. as follows:  Clarica Life Insurance Company

– U.S. and its affiliates shall not obtain from Wilmington Trust Corp. the proceeds of Letters of

Credit Nos. 4-0211 and 4-0212, and, further, Wilmington Trust shall not honor Letters of Credit

Nos. 4-0211 and 4-0212.

Dated:  May 30, 2002                                   Respectfully submitted,


                                                      HANGLEY ARONCHICK SEGAL & PUDLIN


                                      By: _____
                                            Henry E. Hockeimer, Jr. (Atty. I.D. No. 86768)
                                            Alan C. Promer (Atty. I.D. No. 81006)
                                            One Logan Square, 27th Floor
                                            Philadelphia, PA 19103-6933
                                            (215) 568-6200

                                            Attorneys for Plaintiff Investment Properties --
                                            Limerick, L.P.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
:
REITNOUR INVESTMENT PROPERTIES --      :      CIVIL ACTION
LIMERICK, L.P.                         :
1260 Valley Forge Road, Suite 103      :      NO. _____
Phoenixville, Pennsylvania 19460       :
:
vs.                                    :
:
CLARICA LIFE INSURANCE COMPANY – U.S. :
13890 Bishop's Drive, Suite 300        :
Brookfield, Wisconsin 53008            :
:
and                                    :
:
WILMINGTON TRUST CORP.                 :
Rodney Square North                    :
1100 North Market Street               :
Wilmington, Delaware 19890-0001        :
:
Defendants.                            :
_____

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiff Reitnour Investment Properties -- Limerick, L.P. ("Reitnour L.P.") seeks a

temporary restraining order and preliminary injunction to preserve the status quo and to prevent

defendant Wilmington Trust Corp. ("Wilmington Trust") from honoring letters of credit in favor

of defendant Clarica Life Insurance – U.S. (with its affiliates, "Clarica"), and to prevent Clarica

from drawing on those letters of credit.  In presenting a demand on the letters of credit, Clarica

wrongfully asserts that Reitnour L.P. is in default on loan agreements with Clarica; yet if Clarica

is allowed to proceed in drawing on the letters of credit, Reitnour L.P. will be irreparably harmed.

It is important to note at the outset what Plaintiff Reitnour L.P. is *not* seeking in this motion for injunctive relief. Reitnour L.P. does not seek an injunction forcing Clarica to consummate its loan agreements with Reitnour L.P. and fund those loans. Instead, Reitnour L.P. merely seeks an injunction that preserves the status quo by preventing Clarica from obtaining proceeds from the letters of credit.

I.    **PRELIMINARY FACTUAL BACKGROUND**

A.    **The Clarica Loans**

In 2001, Reitnour L.P. applied to Clarica for two loans as "permanent financing" for a property in Montgomery County. See Declaration of Philip A. Reitnour ("Reitnour Decl.", attached hereto as Tab 1), at ¶ 4 and Exh. A thereto. The two loans were for principal loan amounts of $11,110,000 (Clarica Loan #662) and $5,225,000 (Clarica Loan # 146). Id. at ¶ . Reitnour L.P. paid fees in the course of applying for the two loans. Id. These fees, which are set forth in greater detail below, included payments made via letters of credit, issued by Wilmington Trust of Pennsylvania, in the aggregate amount of $327,000. Id. at ¶ 5. Pursuant to the relevant agreements, if Clarica does not fund the loans, and certain conditions are met, Reitnour L.P. is allowed to cancel the letters of credit and can obtain a refund of the fees, less some non-refundable expenses. Id.

As part of the process of approving the loan, Clarica provided for each loan a Commitment for Mortgage Loan ("Commitment Letters"). Id. at ¶ 6 and Exhibit A thereto. The Commitment Letters incorporate conditions for closing. Clarica has apparently refused to close

on the loans, and instead it has presented a demand on the letters of credit to Wilmington Trust[1] on the basis that Plaintiff defaulted on one of those conditions, specifically, a condition that certain litigation in Montgomery County was to be resolved before the funding on the loans would occur.  Id. at ¶ 7.  However, Reitnour L.P. was not, and is not, in default.  Id.

**B. Reitnour L.P. Will Suffer Irreparable Harm if Clarica's Demand on the Letters of Credit is Honored by Wilmington Trust**

Reitnour L.P. is thus in imminent danger of suffering irreparable harm.  Id. at ¶ 9. Wilmington Trust will release the proceeds, and Reitnour L.P. will be irreparably damaged because Wilmington Trust will freeze other of Reitnour L.P.'s assets held at Wilmington Trust in the amount of the letter of credit, and it will charge interest on that amount.  Id.

Reitnour L.P. will thus have a new debt obligation, which will affect its access to further credit, and, more importantly, will prevent Reitnour L.P. from obtaining alternative permanent financing because the assets Reitnour would use to obtain such financing will be frozen. Permanent financing is critical to the sustainability of Reitnour L.P. as a real estate developer. Id. at ¶ 10 .  The freezing of Reitnour L.P.'s assets will obstruct and delay Reitnour L.P.'s attempts to obtain alternative permanent financing particularly during economic times that are already difficult.  Id.  Delays also harm Reitnour L.P. because it is likely, given current interest rates, that financing obtained later will be obtained on terms less favorable to Reitnour due to rising interest rates – if it can obtain such financing at all, given that its assets will be frozen and tied up due to Clarica's contemplated actions.  Id.

---

[1] The letters of credit will be administered and paid out by defendant Wilmington Trust Corp. located in Wilmington, Delaware.  Reitnour Decl. at ¶ 8.

C.      **The Clarica Loans And Commitment Letters**

Reitnour L.P. owns the Lakeview Shopping Center ("Shopping Center") located in Montgomery County, Pennsylvania.  Reitnour L.P.'s development of the Shopping Center was initially financed via two mortgage loans.  Id. at ¶ 13.

The subject of this litigation concerns two new mortgage loans concerning the Shopping Center; defendant Clarica is the mortgagee on these two new loans.  Id. at ¶ 15.  Plaintiff Reitnour L.P. sought these loans in order to refinance the Shopping Center.  Id.

Clarica provided Commitments to fund with respect to the two new loans via Commitment Letters dated September 5, 2001, with a funding date calling for the loan to close on or before March 2, 2002.  Id. at ¶ 16 and Exh. A thereto.  The two loans were for principal loan amounts of $11,110,000 (Clarica Loan #662) and $5,225,000 (Clarica Loan # 146).  Id. at ¶ 4.

The Commitments were extended multiple times by agreement of the parties to the loans. Id. at ¶ 17.   For example, by letters dated March 26, 2002, Clarica agreed to extend the funding date under its Commitment from March 2, 2002, which had previously been extended to April 1, 2002, to April 15, 2002.  Id. at ¶17 and Exh. B thereto.  By letters dated April 12, 2002, Clarica agreed to extend the time further, to April 30, 2002.  Id. at ¶ 17 and Exh. B thereto.  Later, by letters dated May 1, 2002, the Commitments were further extended to May 17, 2002.  Id. at ¶ 17 and Exh. B thereto.

The terms of the Commitment Letters include by reference the terms provided in Reitnour L.P.'s Applications for a mortgage loan ("Applications"); the Applications are dated July 17, 2001.  Id. at ¶ 19 and Exh. A thereto.

D. **The Fees Paid in Connection with the Applications and Commitment Letters**

In connection with obtaining the Commitment Letters from Clarica, Reitnour L.P. paid an underwriting fee of $3,000 per loan and a forward commitment fee in the aggregate of $65,4000. Id. at ¶ .  In addition, Plaintiff paid $392,400 directly to Clarica in a series of checks as part of the application fees and commitment fees; the remainder of these fees were paid by Reitnour via letters of credit, issued by Wilmington Trust of Pennsylvania, in the aggregate amount of $327,000.  Id. at ¶ 10.  The portion of the fees embodied in the letters of credit is the subject of the temporary restraining order that Plaintiff seeks.  Id.

Pursuant to an Addendum to a Schedule to the Applications (Paragraph 5(c) for Loan # 662, Paragraph 4(c) for Loan # 146), the fee that Reitnour L.P. paid was $392,400 in cash (which Reitnour L.P. paid) plus $327,000 posted by two letters of credit issued by defendant Wilmington Trust's subsidiary, Wilmington Trust of Pennsylvania.  Id. at ¶ and Exh. __ thereto. The two letters of credit are in the amounts of $104,500 (Letter of Credit No. 4-0211) and $222,500 (Letter of Credit No. 4-0212).  Id. at ¶ 21 and Exh. A thereto. The letters of credit expire by their terms on July 1, 2002, and, if drawn upon, are funded through Wilmington Trust in Delaware.  Id. at ¶ 21 and Exh. C thereto.

On or about May 28, 2002, Clarica presented a demand on the letters of credit to Wilmington Trust of Pennsylvania.  Id. at ¶ 22.  The presentation of demand has been forwarded to defendant Wilmington Trust in Delaware to be administered and possibly honored.  Id.

Paragraph 15 of the Plaintiff's Applications to Clarica, entitled "Fees and Deposits," provides in pertinent part that "If a Loan is not approved substantially in accordance with the terms of this Application, the Application Fee will be returned to the Applicant less any costs

and expenses described below.  If a Loan is approved by Clarica, the Application Fee will apply towards the Commitment Fee required by Clarica and described below."  Id. at ¶ 23 and Exh. A thereto.

The same Paragraph 15 of the Applications also states, "The Commitment Fee must accompany the Commitment when it is accepted by the Applicant and returned to Clarica.  After the Loan has been closed and funded, Clarica will promptly refund, by check to the Applicant, the Commitment Fee less the deductions listed below. "  Id. at ¶ 24 and Exh. A thereto. (This sentence appears to have been accidentally cut off in mid-sentence in the Application for Loan #146.)

### E.  **The Alpha Realty Litigation as a Condition in the Commitment Letters**

Particularly in dispute at present is a provision in the Applications that relates to another litigation, the "Alpha Realty litigation" (Alpha Realty Management Co. v. Reintour Investment Properties – Limerick, L.P., Montgomery County Court of Common Pleas Civil Action no. 99-14039).

The Applications of Reitnour L.P. state, in Paragraph 4(k) (Loan  # 146) / Paragraph 5(k) (Loan # 662) of an Addendum to a Schedule attached to the Applications, in pertinent part:  " . . . Borrower has disclosed to Lender that it is a defendant in the "Alpha Realty" litigation, which Borrower represents will be resolved prior to funding the Loan and will not adversely impact the Borrower or encumber the Property."  Id. at ¶ 26 and Exh. A thereto.

The Addendum also states, in its closing paragraph, in pertinent part, ". . . Lender agrees that in the event Lender decides not to fund the Loan due to any of the Disclosures *or due to any other reason beyond Borrower's reasonable control*, such as environmental, survey or title issues, Lender will return to Borrower all fees paid by Borrower to Lender less the Underwriting

Fee, the forward commitment fee and Lender's actual out-of-pocket costs and expenses." Id. at ¶ 27 and Exh. A thereto (emphasis added).

In the Alpha Realty litigation, Reitnour L.P. is the defendant. Id. at ¶ 28. A judgment by confession in the principal amount of $475,000 was entered in the Montgomery County Common Pleas in that action. Id.

### F. **Reitnour L.P.'s Efforts to Resolve the Alpha Realty Litigation**

Plaintiff has undertaken numerous actions in order to resolve the Alpha Realty litigation. Id. at ¶ 29. To the extent those efforts were unsuccessful, it was due to reasons beyond Plaintiff's reasonable control. Id. at ¶ 30. For example, Reitnour L.P. filed a petition to vacate and open the confessed judgment in the Montgomery County Court of Common Pleas. Id. at ¶ 31. On February 26, 2002, the Honorable Paul W. Tressler of the Montgomery County Court of Common Pleas entered an Order in the Alpha Realty litigation that states, in pertinent part, "1. This court shall order the judgment lien vacated if defendant certifies that it has filed a bond in the amount of no less than $750,000.00, and for a duration of no fewer than four years, provided that the property currently subject to the lien shall not be used as collateral for said bond; 2. In no event shall defendant sell the property currently subject to the lien prior to the final resolution of the above-captioned matter, without prior approval of this court; . . . ." Id. at ¶ 32 and Exh. D thereto.

On or about April 5, 2002, in accordance with the Order of the Montgomery County Court of Common Pleas dated February 26, 2002 in the Alpha Realty litigation, Reitnour L.P. delivered or caused to be delivered to the Honorable Paul W. Tressler of the Montgomery County Court of Common Pleas a bond issued by Harleysville Mutual Insurance Company in the amount of $559,000 along with a letter of credit in the amount of $191,000 issued by New

Century Clarica, totaling $750,000.00.  Id. at ¶ 33.  These efforts were undertaken by the Plaintiff in order to resolve the Alpha Realty litigation and satisfy the related condition of the Commitment Letters.  Id.

By letter dated April 22, 2002, New Century Clarica clarified to the Honorable Paul W. Tressler that if Reitnour L.P. did not replace the bond prior to November 20, 2002 with another bond for a term of not less than 3 years in the full amount of $750,000, then upon delivery to New Century Clarica of its original letter of credit, New Century Clarica would issue an unconditional letter of credit naming the Montgomery County Court of Common Pleas as beneficiary effective November 30, 2002 in the face amount of $750,000 for a term of three years.  Id. at ¶ 34.

The bond was originally issued to Old Republic Title Insurance Company in connection with Plaintiff's  construction loan for the Shopping Center; the construction lender required that a bond be posted to the title company.  Id. at ¶ 35.  On March 20, 2002, the obligee under that original bond was changed from the title insurance company to the Montgomery County Court of Common Pleas.  Id.

Plaintiff offered the security requested in the Court's February 26, 2002 Order in this manner because Plaintiff was unable to obtain a bond in the full amount, due to the tightening of the bonding market after September 11, 2001.  Id. at ¶ 36.  Instead, Plaintiff obtained the letter of credit from New Century Clarica to make up the difference.  Id. at ¶ 36.

Despite the efforts of the Plaintiff, Alpha Realty objected to the form of Plaintiff's posted bond and letter of credit.  Id. at ¶ 37.  Due to this action by Alpha Realty, which was beyond the Plaintiff's control, the Court in the Alpha Realty litigation did not vacate the judgment lien. Clarica did not object to the bond and letter of credit.  Id.

Reitnour L.P. has also tried to resolve in other ways Clarica's concern over the Alpha Realty litigation, and those efforts were rebuffed by Clarica. Id. at ¶ 38. Despite Reitnour L.P.'s offer to have the judgment lien covered by title insurance, Clarica has not agreed to have a title company insure the judgment lien in the Alpha Realty litigation. Id. Consequently, Plaintiff, obtained a favorable Order from the Montgomery County Court of Common Pleas, posted the requested funds, and it also offered an alternative solution of title insurance. Id. Clarica has not accepted any of these as resolving the litigation, and thus Plaintiff has been forced to look for still more ways to resolve the Alpha Realty litigation pursuant to the Commitment Letters. Id.

In yet another attempt to resolve the Alpha Realty litigation, Plaintiff agreed to provide Clarica with a letter of credit to satisfy the judgment lien. Id. at ¶ 39. In fact, Clarica initiated this resolution, and Reitnour L.P. accepted it. Id. at ¶ 40. Specifically, Reitnour L.P. agreed to obtain a letter of credit in favor of Clarica so that Clarica could draw on the letter of credit to pay off the Alpha Realty judgment in the event the judgment was not satisfied directly by Reitnour L.P. after the occurrence of specified events, particularly the non-payment of the judgment. Id. at ¶ 41.

Following up on this agreement, in letters dated April 30 and May 3, 2002, through counsel, Reitnour asked Clarica to review a form letter of credit and to draft a letter agreement governing the disposition of the letter of credit; Reitnour L.P. offered to draft the letter agreement if Clarica did not have the time to do so. Id. at ¶ 42. By e-mail dated May 8, 2002, Reitnour L.P.'s counsel was informed that Clarica did not approve of the form of letter of credit. Reitnour L.P. asked for a draft letter agreement governing when and under what terms Clarica could draw down the letter of credit, suggesting that Clarica should have the right to draw down

the letter of credit if Reitnour L.P. did not pay the judgment off within thirty days after the date the judgment became final and unappealable.  Id. at ¶ 43.

Clarica then presented Reitnour L.P. with its form of a letter of credit.  Id. at ¶ 44. Reitnour L.P. sought to have the letter of credit issued by New Century Clarica, but Clarica objected to that bank.  Id.  In further pursuit of its objective of satisfying Clarica's demands and concerns, Reitnour L.P. then went to Wilmington Trust, to have a letter of credit issued in the amount of $750,000, in the form approved by Clarica.  Id.  After Reitnour L.P. did this, Clarica then apparently decided that it would not be satisfied with this approach.  Id.

Further, Clarica's draft letter of credit agreement did not reflect the agreement of the parties, and thus another attempt of Plaintiff to resolve the Alpha Realty litigation was waylaid by Clarica.  Id. at ¶ 45.

On May 13, 2002, Clarica stated in a letter that it did not believe the Alpha Realty litigation had been resolved as required by the Commitment Letters, and it further noted that it believed the Court of Common Pleas' February 26, 2002 Order prohibiting Reitnour L.P. from encumbering the property for the bond or selling the property until final resolution of the Alpha Realty created risks for Clarica.  Id. at ¶ 46 and Exh. E thereto.  Clarica apparently believed that if Clarica proceeded all the way to closing on the loans, it could be subjected to a contempt of court action, and that it could also be subjected to a contempt of court action if it did close on the loans and later attempted a remedy of foreclosure.  Id.  In sum, with the February 26, 2002 Order in place, Clarica would not close on the loans, requiring that Reitnour L.P. "resolve" the Alpha Realty litigation or have the Court of Common Pleas of Montgomery County issue a clarifying order removing the risk of the contempt of court action.  Clarica also offered to extend the Commitments until May 31, 2002 without additional fees if this could be done.  Id.  The May

10

13, 2002 letter does not state that the ability to resolve the Alpha Realty was really totally within Reitnour L.P.'s control.

Reitnour L.P. responded with yet another attempt to satisfy Clarica. Id. at ¶ 47. Reitnour L.P. planned to move to have the February 26, 2002 Order of the Montgomery Court of Common Pleas vacated, in order to resolve Clarica's reservations about the language in that Order. Id. Thus, after having successfully gone through the procedure of opening the judgment in an attempt to resolve the Alpha Realty litigation to appease Clarica, Clarica forced Reitnour L.P. to "undo" its work because Clarica did not like the language in the Order issued by the Court of Common Pleas of Montgomery Count. Id. However, the plaintiff in the Alpha Realty litigation refused to agree to the stipulation to vacate the February 26, 2002 Order of the Montgomery Court of Common Pleas. Id. at ¶ 48.

Reitnour L.P.'s counsel wrote to Clarica's counsel on May 17, 2002 explaining that the opposing party in the Alpha Realty litigation refused to stipulate to vacate the February 26 Order. Id. at ¶ 49 and Exh. F thereto. Reitnour L.P.'s counsel also noted 1) that Reitnour L.P. had tried to accommodate Clarica first by moving to vacate and open the confessed judgment, which resulted in the February 26, 2002 Order; 2) that the fear of a contempt of court action based on the language of that Order was unfounded, as there was already a mortgage on the property, and that the original mortgage and any subsequent mortgages such as the ones contemplated with Clarica would be subordinate to the judgment lien and thus of no consequence to the judgment creditor; 3) that this was why Reitnour L.P. had agreed to provide an additional letter of credit in favor of Clarica, as proposed by Clarica, to cover the judgment lien in the event Reitnour L.P. did not pay it on its own. Id. Reitnour L.P.'s counsel also wrote that the Alpha Realty litigation could still be addressed by 1) title insurance or 2) Clarica's reconsidering its conclusion that

there was a risk of a contempt proceeding, and if either of these occurred, Reitnour L.P. would accept the offer to extend the Commitments until May 31, 2002; in the alternative, Reitnour L.P.'s counsel requested that Clarica return Reitnour L.P.'s fees (the $327,000 in letters of credit and $392,400 in cash, less other fees and expenses).  Id.

Clarica has not responded to the May 17, 2002 letter, nor has it notified Reitnour L.P. that it contends that Reitnour L.P. is in default.  Id. at ¶ 50.  Clarica personnel have refused to speak substantively with Mr. Reitnour on the telephone, and their counsel has refused to speak with Reitnour L.P.'s counsel.  Id.  However, Clarica has presented to Wilmington Trust a demand for the proceeds of the letters of credit.  Id.

As of May 30, 2002, Clarica had not offered to accept title insurance or to agree to the other proposals for resolution of the Alpha Realty litigation issue, nor had it returned to Reitnour L.P. its refundable fees.  Id. at ¶ 51.

Because Clarica has refused to refund Reitnour L.P.'s cash fees, and because it is proceeding with a presentation and demand on the letters of credit, Reitnour L.P. does not have access to the cash funds it would use to obtain permanent financing from an alternative lender. Id. at ¶ 53.

In fact, a mortgage broker, Urban/Poole & Heath, LLC has approached Reitnour L.P. with propositions from other lenders, including William Blair and J.P. Morgan, for alternative financing.  These propositions are appear to be acceptable to Reitnour L.P.  Id. at ¶ 54.  Further, these lenders have indicated that any issue as to the judgment lien in the Alpha Realty litigation can be resolved via title insurance.  Id. at ¶ 55.

However, because Clarica is refusing to refund the fees and is proceeding to draw on the letters of credit, Reitnour L.P. is unable to provide to these prospective alternative lenders the

fees needed to obtain a commitment from these new lenders.  Id. at ¶ 56.  It should be obvious to

Clarica that if Clarica is not going to proceed to close on the loans, Reitnour L.P. will need to

seek financing from another lender.  Id. at ¶ 57.

Clarica's unjustifiable and unprivileged actions in refusing to refund monies and in

proceeding to attempt to draw on the letters of credit are intentional and are done with

knowledge that if Clarica does not consummate the loans with Reitnour L.P., Reitnour L.P. will

have to look elsewhere for funding.  Id. at ¶ 58.  Clarica's intentional actions thereby are directly

causing damages to Reitnour L.P.  Id. at ¶ 58.


II.    **ARGUMENT**

Under well-established law, Reitnour L.P. is entitled to a temporary restraining order and

preliminary injunction because: (1) there is a reasonable probability of success on the merits; (2)

Reitnour L.P. will be irreparably injured by the denial of the relief; (3) greater harm will be

suffered if the injunction is not granted; and (4) granting the preliminary injunction does not

disserve the public interest.  See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160,

171 (3d Cir. 2001.); Siemens v. Carmelengo, 167 F. Supp.2d 752, 757 (E.D. Pa. 2001).[2]

A.    **Reitnour L.P. Has a Reasonable Probability of Success on the Merits**

As noted above, the Addendum states, in part, ". . . Lender agrees that in the event

Lender decides not to fund the Loan due to any of the Disclosures *or due to any other reason*

*beyond Borrower's reasonable control*, such as environmental, survey or title issues, Lender will

return to Borrower all fees paid by Borrower to Lender less the Underwriting Fee, the forward

---

[2] The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction.  See Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

commitment fee and Lender's actual out-of-pocket costs and expenses." (emphasis added).  As the facts make clear, to the extent Reitnour L.P. was unable to resolve the Alpha Realty litigation, it was due to reasons beyond its reasonable control.

The condition that Clarica apparently contends was not met by Reitnour L.P. was the provision in the Addendum:  " . . . Borrower has disclosed to Lender that it is a defendant in the "Alpha Realty" litigation, which Borrower represents will be *resolved* prior to funding the Loan and will not adversely impact the Borrower or encumber the Property."  (Applications of Reitnour L.P. Paragraph 4(k) (Loan  # 146) / Paragraph 5(k) (Loan # 662); see Reitnour Decl. at ¶ 26 and Exh. A thereto) (emphasis added).

Reitnour L.P. is likely to prevail for the following reasons.  First, it did resolve the Alpha Realty litigation, and to the extent Clarica argues it did not, it was due to factors beyond Reitnour L.P.'s control.  Second, Clarica waived its requirement that Reitnour L.P. "resolve" the Alpha Realty litigation, in the strict sense the Clarica seems unreasonably to read that provision, through its conduct in agreeing to accept, in lieu of "resolution" of the Alpha Realty litigation, a letter of credit that could be drawn down if the judgment lien remained unpaid after it became final and unappealable.

1.    **Reitnour L.P. Resolved the Alpha Realty Litigation**

Reitnour L.P. "resolved" the Alpha Realty litigation by successfully petitioning the Montgomery County Court of Common Pleas, as evidenced by that Court's February 26, 2002 Order (attached to the Reitnour Decl. as Exh. D).  This alone "resolved" the Alpha Realty litigation.

Further, in accordance with that Order, Reitnour L.P. posted money with the Court, which should have vacated the judgment lien.  However, for reasons beyond Reitnour L.P.'s

14

control, the Court of Common Pleas did not vacate the judgment; in particular, Alpha Realty objected to the form of the monies posted, which did not precisely conform to the Court's Order because, as explained above, Reitnour L.P. was unable to obtain, for reasons beyond its control, a bond in the total amount required by the Court.  Reitnour L.P. instead made up the difference by providing letters of credit.

Based on correspondence from Clarica's counsel, Clarica's "sticking point" with respect to Reitnour L.P.'s resolution of the litigation via the February 26, 2002 is the additional language in that Order:  "In no event shall defendant sell the property currently subject to the lien prior to the final resolution of the above-captioned matter, without prior approval of this court; . . . ." (Reitnour Decl. at ¶ 32 and Exh. D thereto.)   This language was inserted by the Court and was not within the control of Reitnour L.P.

Moreover, Clarica is being unreasonable in construing this language as creating risk for Clarica.  As pointed out in the May 17 letter from Reitnour L.P.'s counsel to Clarica's counsel (attached to the Reitnour Decl. at Exh. F), there is already a mortgage on the property; the refinance of the property should not be construed, therefore, as violative of the Court's Order. Still further, Reitnour L.P. offered alternative solutions to allay Clarica's fears, including title insurance and the provision of a letter of credit, either of which would protect Clarica from any perceived problem on account of the judgment lien.  Clarica's refusal to accept these proposals evidences its unreasonable, narrow, bad faith, obstinate attitude with respect to the "resolution" of the Alpha Realty litigation.  *In particular, it is unfathomable why Clarica will not refund the cash fees that Reitnour L.P. paid up front, or why it apparently is about to draw on the letters of credit to aggregate to itself the remainder of Reitnour L.P.'s commitment and application fees, when it is not going to consummate the loan.*  Not only has Clarica denied Reitnour L.P. its much

needed financing, which Reitnour L.P. has heavily relied upon, it is adding insult to injury by walking away with over $700,000 that Reitnour L.P. put up essentially as earnest money.

Reitnour L.P. is at a loss to explain why Clarica will not refund these monies to Reitnour L.P., which seems to be in direct contravention of the terms of the agreement: "Lender agrees that in the event Lender decides not to fund the Loan due to any of the Disclosures or due to any other reason beyond Borrower's reasonable control . . .  Lender will return to Borrower all fees paid by Borrower to Lender less the Underwriting Fee, the forward commitment fee and Lender's actual out-of-pocket costs and expenses."  Addendum, closing paragraph. (Reitnour Decl. at Exh. A.)  Here, Lender clearly has refused to fund due to the Disclosure regarding the Alpha Realty litigation, and, on top of this, to the extent Clarica believes Reitnour L.P. failed to "resolve" that litigation, it was due to reasons beyond Reitnour L.P.'s control.  That is, both of the conditions entitling Reitnour L.P. to a refund of the payments at issue – either of which would be sufficient to warrant the refund – are satisfied.  For these reasons, Reitnour has a reasonable probability of succeeding on the merits.

### 2. Clarica Waived the Requirement that Reitnour L.P. "Resolve" the Alpha Realty Litigation

Alternatively, Plaintiff is likely to succeed on the merits because Clarica waived the requirement that Reitnour L.P. had to "resolve" the Alpha Realty litigation, or it modified this part of the agreement by a new agreement with Reitnour L.P.

Specifically, as set forth above, Clarica suggested that Reitnour L.P. could provide a letter of credit in an amount sufficient to cover the judgment lien, so that Clarica could draw on the letter of credit in the event Reitnour L.P. failed to pay the judgment after it became final and unappealable.  Such a suggestion waived Clarica's ability to insist that Reitnour L.P. "resolve" the Alpha Realty litigation (in the strict sense that Clarica apparently reads the word "resolve").

Moreover, Reitnour L.P. accepted this idea, and thus the parties agreed to modify the Commitment Letters with respect to this condition.  See, e.g. Godfrey Co. v. Crawford, 23 Wis.2d 44, 49, 126 N.W.2d 495, 497 (Wis. 1964) (party may waive contractual provision that is for its own benefit); Jakubowski v. Rock Valley Builders, 209 Wis.2d 602, 568 N.W.2d 38, at ***3-4 (Wis. Ct. App. 1997) (Table, text in Westlaw) (discussing modification of contract by waiver and by modification).[3]  The fact that Clarica apparently later went back on its word and refused to accept its own idea of using a letter of credit in lieu of "resolving" the Alpha Realty litigation is merely evidence of Clarica's continuing bad faith.

3.    **Reitnour L.P. Has a Reasonable Probability of Succeeding on its Claim for Interference with Existing and Prospective Contractual Relations**

As set forth in the facts above, Clarica's intentional actions are wrongfully preventing Reitnour L.P. from entering into arrangements with alternative lenders for financing.  To obtain the requested injunctive relief, Reitnour L.P. need only show that there is a reasonable probability that:  (1) an existing or prospective contractual relationship will be interfered with, (2) Clarica's purpose or intent is to harm Reitnour L.P. by interfering with the actual or potential relationship, (3) Clarica has no privilege defense to the action and (4) damages will result.  See Rufing v. 84 Lumber Company, 410 Pa. Super. 459, 467, 600 A.2d 545, 549 (1991); Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc., 931 F. Supp. 377, 386 (E.D. Pa. 1996).  Reitnour L.P. satisfies these elements.

There is a reasonable probability that Clarica's actions will interfere with Reitnour L.P.'s prospective contractual relationships with lenders like William Blair and J.P. Morgan, who have

---

[3] The Schedule attached to the Commitment Letter and Application, at paragraph 29, states that the Commitment shall be governed by Wisconsin law.

already approached Reitnour L.P. with proposals for permanent financing; Clarica's actions in wrongfully refusing to refund monies and in wrongfully proceeding to draw on the letters of credit make it impossible for Reitnour L.P. to bring to a successful conclusion the prospective contracts with those alternative lenders.

Second, Clarica "need not act with the specific intent of interfering with plaintiff's contracts. Rather the second prong is satisfied if defendant acts improperly and with the knowledge that such interference is substantially certain to occur." Barmasters Bartending School, Inc., 931 F. Supp. at 385-386. As noted above, Clarica certainly ought to realize that, given its own lack of interest in consummating the loans with Reitnour L.P., Reitnour L.P. will be looking for alternative lenders for the financing. Thus, Clarica's improper actions are made with the knowledge that interference with alternative financing contracts is substantially certain to occur.

Third, Clarica has no privilege to justify its conduct. It appears to be attempting to both refuse to fund on the loans to Reitnour L.P. and to keep fees that are refundable, and to obtain via the letters of credit still more fees that ought to be refunded.

Fourth, Reitnour L.P. need not show actual damages at the injunction stage. Id. As discussed above, however, Clarica's actions pose a serious threat to both Reitnour L.P.'s ability to obtain critical permanent financing. Accordingly, Reitnour L.P. is entitled to injunctive relief to prevent the Clarica from creating further damage.

To prevail on a cause of action for tortious interference with prospective contractual relations, Reitnour L.P. need establish only the following four elements: (1) the existence of a prospective contractual relationship with the alternative lenders; (2) intentional conduct by Clarica that is intended to interfere with the prospective contractual relationship; (3) the absence

18

of privilege or justification for interfering with the relationship; and (4) resulting harm.  J. Goldstein & Co. v. Goldstein, 52 Pa. D.&C.4th 211, 217 (Phila. Cty. 2001) (Herron, J.); Remick v. Manfredy, 238 F.3d 248, 263 (3d Cir. 2001).  Reitnour L.P. satisfies each of these elements.

First, Reitnour L.P. has established a prospective contractual relationship with Deutsche Clarica.  As set forth in Mr. Reitnour's declaration, William Blair and J.P. Morgan are willing to provide alternative financing to Reitnour L.P. on reasonable terms.  Reitnour Decl. at ¶ 54.

Second, Reitnour L.P. has established that Clarica has intentionally interfered with this prospective relationship.  Clarica's actions make it impossible for Reitnour L.P. to execute on the deals offered by the alternative lenders, and, as explained above, Clarica must realize that Reitnour L.P. is going to attempt to find alternative lenders, given Clarica's refusal to consummate the loan transactions.

Third, Reitnour L.P. has established that Clarica lacks a privilege or other justification for its interference.  Under Pennsylvania law, the relevant inquiry to determine whether interference is privileged or justified is whether the defendant's conduct was improper.  J. Goldstein, 52 Pa. D.&D.4th at 218 ("the absence of privilege or justification on the part of the defendant is merely another way of stating that the defendant's conduct must be improper") (quoting Cloverleaf Dev., Inc. v. Horizon Fin. F.A., 347 Pa. Super. 75, 83, 500 A.2d 163, 167 (1985)); First Health, 155 F. Supp.2d at 232 ("[T]he relevant inquiry must focus on the propriety of a defendant's conduct considering the factual scenario as a whole.") (quoting Ruffing v. 84 Lumber Co., 410 Pa. Super. 459, 600, A.2d 545, 549 (1991)).  To determine whether the defendant's conduct is improper, courts consider the following seven factors:

(a) the nature of the actor's conduct;

(b) the actor's motive;

     (c) the interests of the other with which the actor's conduct interferes;

     (d) the interests sought to be advanced by the actor;

     (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other;

     (f) the proximity or remoteness of the actor's conduct to the interference; and

     (g) the relations between the parties.

J. Goldstein, 52 Pa. D.&C.4th 218 n.3 (quoting Restatement (Second) of Torts, § 767).

Evaluating the above-listed factors in the instant case, and as explained in the previous sections on why Reitnour L.P. is likely to prevail on the merits of its contract claims seeking the refund of the fees, Clarica's refusal to refund the refundable fees is improper.

Clarica is directly interfering with Reitnour L.P.'s vital interest in obtaining permanent financing by precluding it from making deals with alternative lenders. Moreover, Clarica's interference is contrary to public policy in that it acts as a restraint on trade by precluding two interested parties from transforming a prospective contractual relation into a mutually beneficial contractual relationship. In sharp contrast, Clarica has no legitimate motive or interest in interfering with the alternative financing.[4]

Fourth, Reitnour L.P. has established that it will suffer irreparable harm if it is denied the ability to obtain financing from alternative lenders. Reitnour L.P. may not ever be able to obtain alternative financing from such lenders if its refundable fees are not returned.

---

[4] Interestingly, Clarica is imminently merging with the large Canadian corporation Sun Life Financial Services of Canada. Clarica is eliminating at least one and possibly all of its United States offices as a consequence of the merger. Reitnour Decl. at ¶ 11.

### B.  **Reitnour L.P. Will Be Irreparably Injured by the Denial of the Relief**

As reflected in the facts laid out above, and as evidenced in the Complaint and the Declaration of Philip Reitnour, Reitnour L.P. will suffer irreparable if the injunctive relief is not granted.  Specifically, Clarica will obtain the proceeds of the letter of credit.  But Reitnour L.P. will not merely be deprived of that money.  Indeed, a remedy at law – a suit, for example, against Clarica, for breach of contract – would not put Reitnour back in the position of the present status quo ante – it could not make him whole.

This irreparable harm arises because of the nature of the effect on Reitnour L.P.'s assets if Wilmington Trust honors Clarica's demand.  That is, as explained above, the bank will freeze Reitnour L.P.'s other assets and charge Reitnour L.P. interest on the obligation of $327,000.  This will prevent Reitnour L.P. from being able to obtain other financing on the property, choking the lifeblood of Reitnour L.P.  Further, given the likelihood of a rise in interest rates in the context of the present nearly historical lows, Reitnour L.P. will be further irreparably damaged – that is, if Reitnour L.P can even obtain such financing, given the freeze on the assets it would ordinarily use to come up with the fees that must be paid for the commitment and application on any new loan.  If Clarica is allowed to wrongfully draw on the letters of credit, Reitnour L.P. will be "stuck" with its present financing, its hands tied because the money it would use to obtain financing is frozen.  However, permanent, long term financing is critical to Reitnour and to real estate developers, generally.  See Lincoln National Life Ins. Co. v. NCR Corp., 603 F.Supp. 1393, 1399 (N.D. Ind. 1984) (noting import of permanent financing and citing Walker v. First Pennsylvania Clarica N.A., 518 F. Supp. 347 (E.D.Pa.1981)).

Even where monetary injury is at issue, there is irreparable harm "where, but for the grant of equitable relief, there a substantial chance that upon final resolution of the action the parties

cannot be returned to the positions they previously occupied."  <u>Brenntag Int'l Chemicals, Inc. v. Clarica of India</u>, 175 F.3d 245, 250.

Moreover, courts do grant preliminary injunctive relief to enjoin a payment under instruments like letters of credit.  <u>See, e.g.</u>, <u>Brenntag Int'l Chemicals, Inc. v. Clarica of India</u>, 175 F.3d 245, 249 (2nd Cir. 1999) (affirming order granting preliminary injunction enjoining issuer from making payment under irrevocable stand-by letter of credit); <u>Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co.</u>, 649 F.Supp. 1310 (D. Nev.1986) (restraining collection of letter of credit that would adversely affect business reputation), <u>aff'd</u>, 844 F.2d 792 (9th Cir. Apr 04, 1988) (Table, text in Westlaw).  Clarica's actions, if they are not enjoined, prevent Reitnour L.P. from obtaining alternative financing.

C.  <u>**The Benefit of Granting Injunctive Relief Outweighs Denial and Serves the Public Interest**</u>

A balancing of the equities clearly favors Plaintiff.  As described in the previous section, if Clarica draws successfully on the letters of credit, it will not be possible to restore Plaintiff to the status quo ante.  However, if injunctive relief is granted, the harm to the defendants is slight. Clarica will only be deprived of the benefits of the proceeds of the letters of credit until this dispute is resolved and it is determined if, in fact, Clarica is actually entitled to these proceeds. Wilmington Trust is hardly affected, as it will continue in its role as issuer of the letters of credit.

Finally, there is nothing in the public interest that is contrary to Plaintiff's goal of preserving the status quo in an attempt to prevent a wrongful drawing on a letter of credit.

Dated:  May 30, 2002.                    Respectfully submitted,


                                         HANGLEY ARONCHICK SEGAL & PUDLIN


                              By:_____
                                   Henry E. Hockeimer, Jr. (Atty I.D. No. 86768)
                                   Alan C. Promer (Atty. I.D. No. 81006)
                                   One Logan Square, 27th Floor
                                   Philadelphia, PA 19103-6933
                                   (215) 568-6200

                                   Attorneys for Plaintiff Investment Properties --
                                   Limerick, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that copies of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, and the Memorandum of Law in Support of the Motion to Motion for a Temporary Restraining Order and Preliminary Injunction, were served on May 30, 2002, as follows:

By Hand Delivery:    Richard M. Jordan, Esquire
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
(Counsel for Wilmington Trust Corp.)

By Federal Express:    Clarica Life Insurance Company – U.S.
13890 Bishop's Drive, Suite 300
Brookfield, Wisconsin 53008

By Federal Express:    Joseph J. Balistreri, Esquire
Reinhart, Boerner, Van Deuren,
  Norris & Rieselbach, S.P.
1000 North Water Street, Suite 2100
Milwaukee, WI 53203-3400
(Counsel for Clarica Life Insurance Company-U.S.)

_____

Henry E. Hockeimer